UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MICHAEL HASKINS                                      PLAINTIFF


VS.                        CIVIL ACTION NO. 3:07CV738TSL-JCS


R. JAMES NICHOLSON, FORMER
SECRETARY, AND GORDON H.
MANSFIELD, ACTING SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS                       DEFENDANTS


MEMORANDUM OPINION AND ORDER

Plaintiff Michael Haskins filed the present "mixed case

appeal" pursuant to the Civil Service Reform Act (CSRA), 5 U.S.C.

§ 1101 *et seq.*, seeking review of a ruling by the Merit System

Protection Board (MSPB) upholding his termination from employment

by defendant Department of Veterans Affairs (VA).[1]  In addition,

plaintiff has challenged a separate decision by the Equal

Employment Opportunity Commission on a claim that the VA's

termination of his health insurance coverage following the

_____

[1]     The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C.
§ 1101 *et seq.*, provides certain federal employees the right to
administrative and judicial review of specified adverse employment
actions, including removal. Elgin v. Dep't of Treasury, — U.S. —,
132 S. Ct. 2126, 2130 (2012) (citations omitted).  Pursuant to 28
U.S.C. § 1295(a)(9), the Court of Appeals for the Federal Circuit
has exclusive jurisdiction over an appeal from a final decision of
the MSPB; but "[i]f a case involves a discrimination claim, the
Federal Circuit's jurisdiction is not exclusive and a federal
employee may obtain de novo review of an MSPB decision in such a
'mixed case appeal' by filing a civil action in federal district
court." Orr v. Merit Systems Protection Bd., 379 Fed. Appx. 333,
335, 2010 WL 2008149, 1 (5th Cir. 2010).  Haskins has filed a
"mixed case appeal."

termination of his employment was retaliatory.  By agreement of the parties, the entire case has been submitted to the court for decision.  Having considered the parties' "trial briefs" and the administrative record, the court concludes that plaintiff has failed to establish any grounds to reverse the MSPB's ruling affirming the VA's termination decision.  Further, the court, having reviewed all the record evidence, concludes that plaintiff has failed to establish that his termination was discriminatory or retaliatory, or that the termination of his health benefits was retaliatory.  Accordingly, the court concludes that plaintiff's complaint should be dismissed with prejudice.

Plaintiff Haskins, an African-American male, became employed by the G. B. (Sonny) Montgomery V.A. Medical Center in Jackson, Mississippi as a Supervisory Biomedical Engineer on May 2, 2005. At that time, he had been employed by the federal government for sixteen years, most recently at the VA Medical Center in Amarillo, Texas.  In late September 2005, several months into Haskins' employment at the Jackson Medical Center, his direct supervisor, Don Wainwright, became aware that plaintiff was rumored to be having an affair with Karen Blocker, a budget technician in the Medical Center's Facilities Management Service (FMS) whose husband, Joe Blocker, was also employed in the Facilities Management Service, as an electrician.  Joe Blocker had suspected his wife of an affair with a co-worker, and after discovering an

2

incriminating text message on her cell phone, took the phone to his supervisor, Jack Christian, who determined that the phone number from which the message was sent was Haskins'.  Christian advised Wainwright of what he had learned, and expressed concern about its effect on Joe Blocker, who was reportedly distraught over the situation.  Wainwright, in turn, provided this information to Acting Medical Center Director Rebecca Wiley.  Wiley responded by appointing an Administrative Board of Investigation (ABI), effective November 10, 2005, which was tasked to thoroughly investigate the facts and circumstances regarding allegations that Haskins had created a hostile work environment within the FMS by entering into and carrying on an alleged personal/romantic relationship with Karen Blocker.  In addition, based on information that Haskins had sought outside assistance to learn how to permanently delete
e-mail correspondence from his government computer, the ABI was also directed to investigate Haskins' alleged inappropriate use of government equipment (i.e. computers, telephones, etc.), space, and time for non-government business.

Haskins was notified the same day, November 10, 2005, of the appointment of the ABI.  He was informed contemporaneously that due to the ABI's reviewing allegations of inappropriate behavior in the workplace, he would be detailed to an alternate work assignment outside of the biomedical engineering section, and he

was directed not to make contact during the investigation with any non-managerial FMS staff.

Commencing December 1, 2005, the ABI met and took the sworn statements of several individuals purported to have information bearing on the matters under investigation, including Haskins, Joe Blocker, Karen Blocker, Don Wainwright and Jack Christian.  In the meantime, on December 5, 2005, plaintiff was notified that he was being placed on paid administrative leave from December 6, 2005 through January 6, 2006 pending the outcome of the ABI's investigation.[2]  During his absence, the ABI decided that until it completed its investigation, Haskins should be placed in a non-supervisory detail and assigned to another location to keep him and Joe Blocker from running into each other in the building. Plaintiff was thus advised on January 6, 2006 that upon his return to work on January 9, 2006, he would be reassigned to an alternate work location outside of the Medical Center.

On December 19, 2005, while on administrative leave, plaintiff submitted a complaint of employment discrimination to the EEOC, in which he claimed that the VA had taken certain actions against him on account of his race and sex, and in

---

[2]     The VA has explained without contradiction that is the normal procedure to remove a person who has allegations against them for their own protection and to ease discomfort of others in the office when an administrative board of investigation is ongoing.

4

retaliation for his having previously complained to VA management and to the EEOC that he had been the victim of sexual harassment during his employment at the Medical Center.

Ultimately, on February 13, 2006, the ABI issued its report, finding that Haskins had subjected employees to a hostile work environment and inappropriately used government equipment for non-government business.  Following his review of the findings, Medical Center Director Richard Baltz issued plaintiff a proposed notice of removal on April 3, 2006, based on charges of lack of candor; inappropriate use of supervisory authority which impacted the efficiency and effectiveness of the FMS; failure as a supervisor to uphold and adhere to VA and Medical Center policies on employee responsibilities and conduct; seeking unauthorized external assistance to modify or delete Medical Center information contained within a VA government computer system; and creating a hostile work environment for staff that has impacted the efficiency and effectiveness of the FMS operations.  On May 2, 2006, a final Notice of Removal was issued making plaintiff's termination effective June 2, 2006.

Haskins timely filed a mixed case appeal with the Merit System Protection Board (MSPB), challenging his termination by the VA and alleging that the termination was caused by discrimination

and retaliation in violation of Title VII.[3]  On October 4, 2006,
the MSPB issued its initial decision upholding the termination;
and following Haskins' appeal to the full board, a final decision
was issued February 26, 2007 adopting the initial decision.[4]

---

[3]    A federal employee who is terminated and also alleges he
was discriminated against in violation of Title VII presents a
"mixed case."  See 29 C.F.R. § 1614.302 ("A mixed case appeal is
an appeal filed with the MSPB that alleges that an appealable
agency action was effected, in whole or in part, because of
discrimination on the basis of race, color, religion, sex,
national origin, handicap or age."); see also Chappell v. Chao,
388 F.3d 1373, 1375 (11th Cir. 2004) (explaining that "[a]lthough
the MSPB does not have jurisdiction over discrimination claims
that are not related to adverse actions, it can entertain appeals
in 'mixed cases,' where an employee alleges a Title VII violation
in relation to one of the specified adverse employment actions.")
(citing 5 U.S.C. § 7702; 29 C.F.R. § 1614.302).

[4]    The Federal Circuit explained that an employee who
intends to pursue a mixed case has several paths available to him:
     At the outset, the aggrieved party can choose between
     filing a "mixed case complaint" with [his] agency's EEO
     office and filing a "mixed case appeal" directly with
     the MSPB.  By statute, the relevant agency EEO office
     and the MSPB can and must address both the
     discrimination claim and the appealable personnel
     action.  Should [he] elect the agency EEO route, within
     thirty days of a final decision [he] can file an appeal
     with the MSPB or a civil discrimination action in
     federal district court.  If 120 days pass without a
     final decision from the agency's EEO office, the same
     avenues of appeal again become available: the
     complainant can file either a mixed case appeal with the
     MSPB or a civil action in district court.

     When a complainant appeals to the MSPB, either directly
     or after pursuing [his] claim with the agency EEO
     office, the matter is assigned to an Administrative
     Judge who takes evidence and eventually makes findings
     of fact and conclusions of law.  The AJ's initial
     decision becomes a final decision if neither party, nor
     the MSPB on its own motion, seeks further review within

Plaintiff then filed the present action challenging the MSPB's decision.[5]

The Fifth Circuit has explained that in a mixed-case appeal, which presents non-discrimination-based claims and discrimination-based claims,

> "discrimination claims raised administratively" are reviewed *de novo*". <u>Aldrup v. Caldera</u>, 274 F.3d 282, 285-86 (5th Cir. 2001) (citing 5 U.S.C. § 7703(c) (regarding judicial review of MSPB decisions)).  On the other hand, "non-discrimination claims based on the administrative record" are reviewed with deference; we "will uphold the [MSPB]'s determinations unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law".  <u>Id.</u> at 287.

---

> thirty-five days.  However, both the complainant and the agency can petition the full Board to review an initial decision.  Should the Board deny the petition for review, the initial decision becomes final; if the Board grants the petition, its decision is final when issued. At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, [he] can either appeal the discrimination claim to the EEOC, or appeal the entire claim (or any parts thereof) to the appropriate district court. Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court.
164 F.3d 634, 638-39 (D.C. Cir. 1999) (citations omitted).

    [5]    In addition to challenging his termination as discriminatory/retaliatory, Haskins initially attempted to pursue claims in this cause relating to alleged discrimination and retaliation experienced during his employment at the VA, i.e., pre-termination discrimination/retaliation.  Previously, by order dated January 4, 2010, the court dismissed those claims for failure to exhaust.

Arensdorf v. Geithner, 329 Fed. Appx. 514, 516, 2009 WL 1311511, 2 (5th Cir. 2009).

The court first considers Haskins' non-discrimination-based claims.  A decision by the MSPB as to the validity of any personnel action is not to be set aside unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. §7703(c).  "The petitioner bears the burden of establishing error in the Board's decision." Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

> "In reviewing the merits of the agency's decision, the court will not disturb its findings if supported by substantial evidence based on the record as a whole." Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  The reviewing court "may not reweigh the evidence or substitute its own judgment for that of the Board even if [it] finds that the evidence preponderates against the Board's decision."

Frazier v. Secretary of Homeland Security, 626 F. Supp. 2d 618, 626 (E.D. La. 2009) (citations omitted).

Medical Center Director Baltz cited five bases for plaintiff's termination, as follows:  lack of candor; inappropriate use of supervisory authority which impacted the efficiency and effectiveness of the FMS; failure as a supervisor to uphold and adhere to VA and Medical Center policies on employee

8

responsibilities and conduct; seeking unauthorized external
assistance to modify or delete Medical Center information
contained within a VA government computer system; and
creating a hostile work environment for staff that has impacted
the efficiency and effectiveness of the FMS operations.  To
justify the decision to terminate plaintiff's employment, the VA
was required to prove by a preponderance of the evidence that
he, in fact, committed the misconduct for which he was removed;
that his discharge, based on the misconduct, will promote the
efficiency of the service; and that the penalty imposed was within
tolerable bounds of reasonableness based on a consideration of the
factors set forth in Douglas v. Veterans Admininistration, 5 MSPB
313, 5 M.S.P.R. 280, 305-06 (M.S.P.B. 1981)).  See Kugler v.
Department of Agriculture, 397 Fed. Appx. 634, 637, 2010 WL
4008179, 1 (Fed. Cir. 2010); Bonet v. U.S. Postal Serv., 712 F.2d
213, 214 (5th Cir. 1983).  Haskins maintains herein that the
Board's decision is not supported by substantial evidence, as the
VA wholly failed to establish that he engaged in conduct to
justify his removal from employment.  He further insists that
there is not substantial evidence to support the Board's finding
of a nexus between the alleged misconduct and efficiency of
service.  Lastly, he submits that even if the VA had proven the
alleged conduct, the penalty of removal was not within the bounds
of reasonableness for the alleged conduct, and a lesser penalty

9

would have sufficed.  The court, having reviewed the
administrative record, concludes the MSPB's decision affirming
plaintiff's termination is in accordance with the law and
supported by substantial evidence.

Haskins argues that there was not substantial evidence to
support the Board's decision to uphold the charge of lack of
candor.  The lack of candor charge was based on Haskins' responses
to certain questions posed to him during his December 5, 2005
sworn statement to the ABI during its investigation.  Haskins was
questioned concerning Karen Blocker and was asked specifically
whether he had an affair with Karen Blocker, to which he responded
he did not, and to describe his relationship with Karen Blocker,
to which he responded it was "strictly a working relationship."
In addition, he was asked to describe his personal contact with
Joe Blocker, to which he responded that he had only met Joe
Blocker once, when Blocker came to his office.  In a later
affidavit, Haskins admitted that in fact, he had encountered Joe
Blocker in a hallway on another occasion, but he denied accounts
of Blocker and another witness who had described that encounter as
"heated."

The AJ found that Karen Blocker's testimony before the ABI
revealed that she was having a personal or intimate relationship
with plaintiff outside the job and off agency premises; and based
on that finding, the AJ further found that Haskins' sworn denial

to the ABI that he and Karen Blocker were having an affair, and his assertion that the two had strictly a working relationship, demonstrated a lack of candor. The AJ noted that other evidence corroborated the existence of a relationship between plaintiff and Karen Blocker, including evidence of the text message on her cell phone from Haskins' phone number which read something to the effect, "I can't wait to have you back in my arms."

The AJ also found that Haskins was less than candid when he stated he had only met Joe Blocker on one occasion in his office, as the evidence established that the two men had a conversation in the hallway on another occasion, in which Haskins, by his own admission, told Blocker, "I'm not afraid of any man." The AJ concluded that this was obviously a personal encounter between plaintiff and Joe Blocker, and yet plaintiff had answered otherwise when asked about his personal contact with Joe Blocker.

Haskins claims that since he consistently denied that he was having an intimate relationship with Karen Blocker, and since she also executed an affidavit denying any such relationship and never affirmatively testified that any such relationship existed, then there simply was no credible evidence before the AJ to support the lack of candor charge. In the court's opinion, however, there was ample evidence to support the finding that Haskins failed to respond fully and truthfully to the questions posed to him regarding his relationship with Karen Blocker.

The AJ specifically found that Karen Blocker's affidavit which Haskins submitted to the Board was not credible.  He also reasonably found that a fair inference from Karen Blocker's testimony before the ABI was that, contrary to Haskins' denials, she and Haskins were involved in an intimate relationship, albeit off the VA premises and away from the job.  As the AJ observed, when asked about her relationship with Haskins, Mrs. Blocker inquired whether she was required to answer questions pertaining to her contact with Haskins outside the job; she told the ABI she did not "really care to answer" questions relating to her contact with Haskins outside the job for non-VA reasons; she stated that she did not have an affair with Haskins "on VA premises or on the job"; and she testified she did not feel comfortable answering the question as to who initiated "intimate relationships" between her and Haskins.  Her responses, coupled with the testimony regarding the cell phone message, constitute substantial evidence to support the conclusion that Haskins's responses to the inquiries concerning the relationship were not credible.  See Hambsch v. Dep't of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986) ("The Board's determination of witnesses' credibility is 'virtually unreviewable.'").

As to his testimony regarding personal contact with Joe Blocker, Haskins submits that he was not less than truthful, and that there was not substantial evidence to support the ALJ's

contrary finding.  He acknowledges that there was an occasion when he and Joe Blocker met in a hallway and had a conversation that involved Haskins' relationship with Karen Blocker.  And he does not dispute that he failed to mention this conversation when asked in his ABI testimony about any personal contact with Joe Blocker. However, Haskins points out that in his testimony before the ABI, he never denied this encounter with Joe Blocker; and he suggests that the ABI interrogators never gave him an opportunity to admit or deny the encounter as they never specifically asked him about any contact other than the one meeting in Haskins' office. Clearly, however, plaintiff was given an opportunity to describe any and all personal contact there had been between him and Joe Blocker; and despite that opportunity, plaintiff failed to mention a specific encounter between the two men in a hallway in which there obviously was discussion about the alleged relationship between Haskins and Karen Blocker and in which Haskins reportedly told Blocker, "I'm not afraid of any man."  The AJ was certainly warranted in concluding that Haskins had been less than candid with the ABI.  See Ludlum v. Dep't of Justice, 278 F.3d 1280, 1285 (Fed. Cir. 2002) (finding a lack of candor where agent "did not respond fully and truthfully" to the questions posed to him in an administrative inquiry"); see also Swan Creek Communications, Inc. v. Federal Communications Commission, 39 F.3d 1217, 1222 (D.C. Cir. 1994) (lack of candor exists when an applicant breaches the

duty "to be fully forthcoming as to all facts and information relevant to a matter before the FCC, whether or not such information is particularly elicited.").[6]

A second charge supporting Haskins' removal was his failure as a supervisor to uphold and adhere to VA Medical Center policies on employee conduct and responsibilities.  This charge was based on Haskins' having engaged in inappropriate e-mail dialogue and implied sexual bantering with other female lower-graded staff members throughout the Medical Center during his duty hours.  The AJ reviewed e-mails to and from Haskins and various female employees, and focused, in particular, on e-mail communications between Haskins and Human Resources Assistant Tawn White which contained implied sexual bantering and were clearly inappropriate under VA policy regarding permissible use of e-mail.  The AJ observed, for instance, that the e-mails discussed enhancing performance in the bedroom, the desire to let a woman share

---

[6]     Haskins argues the finding of lack of candor is not supported by substantial evidence because there was no proof, nor any finding, that he had any intent to deceive.  However, "[t]o establish lack of candor, the Board need not prove there was intent to deceive but only that a person failed 'to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete.'" Ebron v. Dep't of Homeland Sec., 2012 WL 1385488, 2 (Fed. Cir. 2012) (quoting Ludlum v. Dep't of Justice, 278 F.3d 1280, 1284 (Fed. Cir. 2002)).

control in the bedroom, how to handle a woman in the bedroom, and plaintiff's taking applications for a companion.

As the AJ noted, VA policy states that "[u]se of e-mail will be limited to sending and receiving messages considered necessary and in the interest of VA" and that "[m]essages and replies should be meaningful, in good taste, and in language appropriate to a business environment. The use of improper, vulgar, or profane language is prohibited and is considered unauthorized use of e-mail." This same policy is repeated in the VA's policy allowing limited use of government office equipment for personal needs, which states that employees "are expected to conduct themselves professionally in the workplace and to refrain from using government office equipment for activities that are inappropriate." The AJ was well warranted in finding that the e-mails were inappropriate and in violation of VA policy, and that Haskins' conduct in this regard constituted a failure on his part, as a supervisor, to uphold and adhere to VA policies on employee conduct and responsibilities.

A further basis cited for Haskins' removal was his seeking unauthorized external assistance to modify/delete VA Medical Center information in a VA government computer. This charge was based on information that on October 31, 2005, Haskins had sought advice and guidance from a friend employed by the Social Security Administration on how to *permanently* delete e-mails from his VA

computer.  The ALJ found that Haskins' explanations – that he did
not know this violated VA guidelines and that he was doing the
Agency a favor by cleaning out his computer's hard drive – were
not credible.  The AJ found, instead, that Haskins, having
participated in network supervisory training, knew there was an
in-house information technology department he could have contacted
to learn how to delete "spam" e-mails, if, in fact, that was his
goal, as Haskins claimed; and the AJ further reasonably inferred
that in bypassing the in-house IT department and seeking help from
a non-VA employee to permanently delete e-mails, Haskins acted
surreptitiously, and was likely "trying [to] hide something."
Though Haskins contends otherwise, there clearly was substantial
evidence to support this decision.

The final basis cited for Haskins' removal was his "creating
a hostile work environment for staff that has impacted the
efficiency and effectiveness of the Facility Management Service
operations."  The VA concluded, and the AJ concurred, that
Haskins' romantic relationship with Karen Blocker created a
hostile work environment for Joe Blocker, in that it exposed
Blocker to taunting and teasing from co-workers (one of whom joked
about Blocker having trouble keeping a woman), and otherwise
created the potential for conflict between Blocker and Haskins in
the workplace, as evidenced by a heated exchange between them
about Haskins' relationship with Karen Blocker.  The AJ found,

16

based on substantial evidence, that these instances occurred because of Haskins' relationship with Blocker's wife, and that it was Haskins' conduct that had created an uncomfortable situation in the workplace for Blocker and others.

In sum, the Board's findings that all of this conduct occurred as charged in the notice of removal, are supported by substantial evidence.  Haskins contends that the decision to discharge him is arbitrary and capricious because it is not based upon specific findings of a nexus between the charged misconduct and the efficiency of the service and because to the extent there is such a finding, it is not supported by substantial evidence. His position is without merit.

Under the applicable regulation, a federal employer may discharge an employee only if "conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities." Bonet, 712 F.2d at 215-216 (quoting 5 C.F.R. § 731.202(a)(2)); see also 5 U.S.C. § 7513(a) ("Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service."). The Board specifically found that Haskins' lack of candor necessarily negatively impacted the efficiency of the service. See Ludlum v. Dep't of Justice, 87 M.S.P.R. 56, 68 (2000) (finding

17

that employee's lack of candor directly impacted the efficiency of the service as "an agency has a right to expect its workers to be honest, trustworthy, and candid" and the employee's lack of candor "strikes at the very heart of the employer-employee relationship"). Further, the VA points out that Haskins' relationship with Karen Blocker otherwise negatively affected efficiency of the service because of its effect on Joe Blocker, and the fact that job assignments had to be rearranged to separate Haskins and Joe Blocker. See Bonet, 712 F.2d at 215 ("[A]n adverse influence on the work of other employees is a factor to be considered in making the above determination.").

An agency's decision to discharge an employee will not be disturbed "unless it exceeds the range of permissible punishment or is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" Gonzalez v. Defense Logistics Agency, 772 F.2d 887, 889 (Fed. Cir. 1985). The decision is entitled to deference, so long as selection of the penalty was based upon a responsible balancing of the relevant factors set forth in Douglas v. Veterans Administration, 5 M.S.P.R. 280, 296-308 (1981).[7] See Bloom v. McHugh, 828 F. Supp.

---

[7]    The Douglas factors are: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory

18

2d 43, 54 (D.D.C. 2011) ("[T]he Court's function is not to decide what penalty it would impose, but rather to ensure that the agency's judgment has been properly exercised and that the penalty does not exceed the maximum limits of reasonableness.").[8]  If an agency's action is based on multiple charges, and if some of the charges are not sustained, the Board's decision "to sustain the penalty should contain a reasoned explanation demonstrating that

---

or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.  Douglas, 5 MSPB 313, 5 M.S.P.R. at 305-06.

[8]     With respect to the penalty, the court reviews the agency-imposed penalty only to determine if the agency considered all the relevant factors, as set forth in Douglas v. Veterans Admininistration, 5 MSPB 313, 5 M.S.P.R. 280, 305-06 (M.S.P.B. 1981), and exercised management discretion within tolerable limits of reasonableness.

all relevant <u>Douglas</u> factors were properly considered." <u>Kline v.
Dep't of Transp.</u>, 808 F.2d 43, 45 (Fed. Cir. 1986).

While Haskins maintains that the penalty of removal is not
within the limits of reasonableness for the charges, the principal
basis offered for this contention is his continued insistence that
"there was an absence of credible evidence to support that there
was an adulterous relationship between Plaintiff Haskins and Karen
Blocker" and that he was thus not less than candid in denying
there was such a relationship.  He further argues that the AJ
concluded the penalty of discharge was within the bounds of
reasonableness without properly addressing his affirmative
defenses of discrimination and retaliation.  In fact, though,
while he obviously disagrees with the AJ's conclusion that he
failed to carry his burden to prove that he was removed because of
discrimination and/or retaliation, he cannot reasonably deny that
the AJ fully considered these claims.  In the end, the court is
satisfied that the board considered the relevant factors
articulated in <u>Douglas</u> for weighing the reasonableness of the VA's
decision, and reasonably concluded that the VA considered the
relevant factors and that the selected penalty was within the
bounds of reasonableness.[9]  Based on all of the foregoing, the

_____

[9]     In his opinion, the AJ cited the testimony of Richard
Baltz, the deciding official, that he had considered the charges
against Haskins to be serious, particularly in light of Haskins'
position as a supervisor, which meant he was held to a higher

court concludes that the MSPB's decision to sustain the VA's termination of Haskins' employment was made to promote the efficiency of the service and is supported by substantial evidence.

The court thus turns its attention to plaintiff's discrimination and retaliation claims.  Because discrimination and retaliation claims brought in the district court are reviewed *de novo*, the court anticipated a jury trial of plaintiff's discrimination/retaliation claims based on plaintiff's demand for same.  However, shortly prior to the date set for trial, plaintiff requested not only that the court, rather than a jury, decide his discrimination/retaliation claims, but also that it do so based on the existing record.  Defendant agreed to this procedure.  The parties thus jointly agreed to forego a trial of plaintiff's discrimination/retaliation claims and to submit those claims for the court's consideration based on the evidence contained in the administrative record, together with supplemental evidence submitted to this court by the parties.  The parties' arguments as

standard of conduct.  The AJ observed that Baltz viewed the charges of lack of candor and creating a hostile work environment as the most serious ones, and that in arriving at the decision to recommend removal, he considered Haskins' failure to accept any culpability; and this lack of honesty, in turn, impacted Baltz's discharge decision.  Baltz testified that Haskins' having sought outside assistance to delete e-mails reemphasized this lack of trust, for if he had a legitimate reason for seeking such assistance, he could have gone to someone in the VA's own IT department.

to these claims are set forth in their respective "trial briefs" submitted for the court's consideration.

The court applies a modified McDonnell Douglas approach to a plaintiff's claim for discriminatory or retaliatory discharge. Under this approach, the plaintiff must first establish a *prima facie* case of discrimination or retaliation.  If he makes the requisite *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment decision.  If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving "(1) that the defendant's reason is not true, but is instead a pretext for [discrimination/ retaliation] (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's [race, in the case of his discrimination claim, or his protected activity in the case of his retaliation claim] (mixed-motive alternative)." Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (quoting Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)) (internal quotation marks omitted)).

To establish a *prima facie* case of discriminatory discharge, a plaintiff must prove that: (1) he is a member of a protected group or class; (2) he was qualified for his position; (3) he was discharged; and (4) he was replaced by someone outside the

protected class, or he was otherwise discharged because of his race/gender.  Lawson v. Southern Components, Inc., 410 Fed. Appx. 833, 835, 2011 WL 480038, 1 5th Cir. 2011) (citing Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004)); Fields v. J.C. Penney Co., 968 F.2d 533, 536 n.2 (5th Cir. 1992)).  "A plaintiff can fulfill the fourth element if [he] proves that [he] was discharged under circumstances in which an employee of a different race would not have been discharged, irrespective of the race of his replacement."  Moore v. Potter, 716 F. Supp. 2d 524, 534 (S.D. Tex. 2008) (quoting E.E.O.C. v. Brown & Root, Inc., 688 F.2d 338, 340–341 (1982)).

Although plaintiff's trial memorandum generally references a putative claim for gender discrimination, his brief contains no argument or citation to evidence to support any such claim.[10]  He does not contend he was replaced by a female or suggest any other basis for finding that his gender was a factor in his discharge. For its part, defendant notes that when asked at the MSPB pre-hearing conference to identify any females whom he believed were valid comparators, Haskins replied that female employees who sent him inappropriate e-mails (and thereby created a hostile work

---

[10]   Plaintiff declares only that he "has presented credible evidence that he was 'singled out' and treated differently; and that his 'comparator' was not terminated despite serious work performance issues that had been documented."  He offers no evidence to support this vague assertion.

23

environment for him) were not investigated or in any way
disciplined, much less discharged.  However, as defendant
correctly notes, only one of these female employees held a
supervisory position, and her alleged misconduct, i.e., e-mailing
Haskins to request a date, in no way compares to the offenses for
which plaintiff was terminated.  See Lee v. Kansas City S. Ry.
Co., 574 F.3d 253, 260 (5th Cir. 2009) (holding that to show that
other employees are similarly situated, employee must offer
comparator who was treated more favorably "under nearly identical
circumstances," which is satisfied when "the employees being
compared held the same job or responsibilities, shared the same
supervisor or had their employment status determined by the same
person, and have essentially comparable violation histories.").
Accordingly, the court concludes that Haskins has failed to
establish a *prima facie* case of gender discrimination and this
claim will be dismissed.

As for his claim of race discrimination, plaintiff has not
purported to identify a white comparator – a similarly situated
white employee who engaged in nearly identical conduct and yet was
not discharged – but he does claim and has offered supporting
evidence that he was replaced by a Caucasian, Richard Cox.  On
this issue, Karen Blocker testified in her deposition that after
Haskins' termination, Don Wainwright hired Cox as a bio-med
supervisor to take over the duties previously performed by

24

Haskins.  Defendant has pointed to no evidence to the contrary.[11]
The court thus concludes that plaintiff has made out a *prima facie*
claim of race discrimination.

The VA has articulated legitimate, nondiscriminatory reasons
for Haskins' discharge, all of which have been detailed *supra.*  In
the court's opinion, Haskins has failed to carry his burden to
establish either that the proffered reasons are false or unworthy
of credence, or that if true, his race was also a motivating
factor in defendant's decision to terminate his employment.

Haskins declares that he "can present credible evidence that
the reason given [by the VA for his termination] is not true, but
instead a pretext for discrimination."  Yet the only evidence he
purports to have presented toward that end consists of his denials
that he engaged in the conduct for which he was ostensibly

---

[11]    In its trial memorandum, defendant states, "Other than
the deposition of Karen Blocker, Plaintiff presents no evidence in
the record to show that Richard Cox was a valid comparative."
However, plaintiff does not contend Cox is a comparator but rather
that Cox was his replacement.  Moreover, defendant does not
suggest any basis for disregarding Ms. Blocker's testimony on this
issue.

Defendant next declares that, "[m]ore importantly,
Plaintiff's being replaced by a Caucasian male is not an
issue which was ever considered by the MSPB or the EEOC, and,
therefore, Plaintiff has failed to exhaust his administrative
remedies on this issue."  However, the fact that plaintiff may
have failed to present proof in the administrative proceedings
before the EEOC and MSPB as to the identity of his replacement
does not mean that he failed to exhaust his claim for
discriminatory discharge.  Plaintiff clearly asserted in the
administrative proceedings that he was discharged on account of
his race, and such claim is thus properly before this court.

terminated.  Plaintiff continues to deny he was involved in an
intimate relationship with Karen Blocker.  But there is ample
circumstantial evidence of the affair; and there is no evidence
even tending to show that VA officials who participated in the
decision-making process did not, in fact, believe that Haskins and
Mrs. Blocker had an affair.  Likewise, there is no evidence that
casts doubt on the veracity of the VA's conclusion that
plaintiff's lack of candor warranted his dismissal.  Furthermore,
VA officials explained, quite credibly in the court's view, their
legitimate concerns that plaintiff's presence in the Medical
Center, in proximity to Joe Blocker, created the unavoidable
potential for conflict in the workplace, and was detrimental to
the efficiency of the service.  Further, plaintiffs' admittedly
seeking outside assistance to delete e-mails form his VA computer,
would have rightly concerned his employer; and in the court's
view, plaintiff's explanation for his actions in this regard ring
false.  Finally, plaintiff cannot and does not deny that his e-
mails exchange with Tawn White, which involved sexual bantering,
was an inappropriate use of VA computers during working hours and
was particularly inappropriate conduct in view of his position as
a supervisor.  In short, plaintiff has failed to establish that
even one of the VA's several proffered reasons for the decision to
terminate his employment is false or unworthy of credence.

Haskins argues alternatively that he "can present credible evidence that ... the reason proffered may be true, [but] is only one of the reasons for Defendant's conduct; and another 'motivating factor' is the Plaintiff's protected characteristic." Yet again, he offers no evidence (beyond his replacement by a Caucasian) suggesting that his race played any role in the termination decision.  Accordingly, as plaintiff has failed to sustain his burden to prove either pretext or mixed-motive relative to his race discrimination claim, that claim will be dismissed with prejudice.

Plaintiff's retaliation claim stems from an allegation that he was the victim of sexual harassment during his employment at the Jackson VA.  According to plaintiff, soon after commencing employment at the Jackson VA Medical Center, a number of aggressive female employees began approaching him at work asking for dates with him, and calling him and sending him unsolicited and unwelcome e-mails seeking dates, all of which created for him a hostile work environment.  Plaintiff has testified that in August 2005, he verbally reported this sexual harassment to his direct supervisor, Don Wainwright, and sought Wainwright's assistance.  When Wainwright failed to take action to address the harassment, which continued unabated, he contacted the EEOC on November 14, 2005 to report the harassment.  In his subsequent sworn statement to the ABI on December, 6, 2005, he informed the

ABI that he had contacted the EEOC to complain of sexual harassment in the workplace, and he testified, as well, that he had informed Wainwright of the harassment in August, but that no action had been taken.  On December 19, 2005, plaintiff filed a formal charge of discrimination and retaliation with the EEOC. After the ABI issued its findings on February 13, 2006, plaintiff filed a supplement to his charge, in which he claimed that he had suffered various forms of retaliation since his initial report of sexual harassment.

A *prima facie* case of retaliation consists of proof by plaintiff that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." <u>McCoy v. Cty. of Shreveport</u>, 492 F.3d 551, 556–57 (5th Cir. 2007). Defendant VA acknowledges that plaintiff engaged in protected activity in that he filed charges of discrimination and retaliation with the EEOC in December 2005 and in February 2006. It also necessarily acknowledges that plaintiff suffered an adverse employment action, as he was terminated.  Defendant's position as to whether plaintiff has established the third element of his *prima facie* case is unclear.

Haskins points out that within a day of his appearance before the ABI in which he testified that he had made a report of sexual

harassment to the EEOC (and to Wainwright) and was pursuing his claim with the EEOC, he was administratively suspended; a month later, on January 9, 2006, he was relocated from the facility and removed from his supervisory role; another month later, on February 13, 2006, the ABI made findings that ultimately resulted in his termination; and less than two months thereafter, on April 2, 2006, he was recommended for termination.  Plaintiff submits that for the purpose of his *prima facie* case, the timing of these events establishes the requisite causal link between his protected activity and his discharge.  See McCoy, 492 F.3d at 562 (recognizing that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation")(internal quotation marks omitted); see also Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001) ("[A] time lapse of up to four months has been found sufficient to satisfy the causal connection....") (internal quotation marks omitted). The VA does not specifically deny that the timing of Haskins' termination and the process leading to his termination could potentially be considered sufficiently close to satisfy his burden at the *prima facie* stage; but it insists that Haskins cannot sustain his ultimate burden to prove that his participation in any protected activity played any role whatsoever in the ABI process, the ABI's findings, or the ultimate decision to terminate his

employment.  The court will assume for the sake of argument that plaintiff has established a *prima facie* case of retaliation.

As discussed *supra*, the VA has articulated legitimate, nondiscriminatory reasons for Haskins' discharge.  Also, as the court has concluded *supra*, Haskins has not proven that the reasons assigned for his termination are false or unworthy of credence. Thus, to prevail on his claim, plaintiff must establish that retaliation was a motivating factor in defendant's termination decision.  However, the only evidence cited by plaintiff as proof of a retaliatory motivation is the close timing referenced *supra* in connection with his *prima facie* case; and the Fifth Circuit has made clear that a plaintiff cannot sustain his burden to prove mixed-motive with nothing more than proof of close timing.  See Nunley v. City of Waco, 440 Fed. Appx. 275, 281, 2011 WL 3861678, 5 (5th Cir. 2011) (distinguishing "the initial 'causal-link' required for making out a prima facie case, and the 'but for' causation required after the employer has offered a legitimate, non-discriminatory justification" and holding that requirement of establishing "but for" causation applies to mixed-motive alternative); Strong v. Univ. Healthcare Sys., LLC., 482 F.3d 802, 808 (5th Cir. 2007) (holding that "temporal proximity alone is insufficient to prove but for causation").  It follows that plaintiff's retaliation claim fails, and will thus be dismissed.

Haskins finally alleges that following his discharge, he was subjected to additional retaliation and reprisal by the VA's termination of his health insurance coverage.  In support of this claim, plaintiff notes that under VA policy, once an employee is terminated, he is to receive a Form 2810 from the VA terminating his membership in the VA's health program.  Plaintiff alleges that "[n]o such action was taken by the Agency as required by VA policy and Plaintiff Haskins continued to receive health coverage through Blue Cross and Blue Shield ("BCBS") until the benefits were terminated in December 2008.  The required Form 2810 was never issued by the Agency as mandated by VA policy."  Plaintiff has no cognizable claim.  He acknowledges that once an employee is separated from employment with the VA, he is no longer entitled to receive health insurance coverage from the VA.  Thus, the termination of his insurance benefits flowed directly from the termination of his employment (which he has not shown was retaliatory).  And in any event, plaintiff has not demonstrated that the VA caused the termination of his health insurance coverage (except to the extent that it caused his termination).  In fact, the facts related by plaintiff indicate that the VA failed to take steps normally required to effect a termination of health insurance coverage, and that BCBS terminated his coverage on its own upon learning of his termination (and he has not shown that BCBS's actions are in any way connected to his participation

31

in any protected activity).  In short, plaintiff has presented no evidence that anyone from the VA took any action regarding the termination of his insurance coverage after he was separated from his employment in June of 2006.  This claim will therefore be dismissed.

Based on all of the foregoing, the court concludes that Haskins has failed to prove his discrimination or retaliation claims relative to the termination of his employment or the termination of his BCBC insurance coverage.  The court further concludes that the decision of the MSPB is not arbitrary or capricious, and is in conformity with the law and supported by substantial evidence.  Therefore, it is ordered that plaintiff's complaint is dismissed with prejudice.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 8th day of August, 2012.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE